IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| **JEAN GARRETT** <br> 605 Cranbrook Road, Apt. J <br> Cockeysville, Maryland 21030 <br><br> *Plaintiff* <br><br> v. <br><br> **BARRY LOCKETT (ID NO. 4194)** <br> Baltimore County Police Department <br> 111 Wright Avenue <br> Cockeysville, MD 21030 <br><br> **Serve on:** <br> Baltimore County Office of Law <br> Baltimore County Historic Courthouse <br> 400 Washington Avenue, #201 <br> Towson, Maryland 21204 <br><br> *Defendant* | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> *  Case No.: <br> * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**COMPLAINT AND DEMAND FOR JURY TRIAL
FOR MONETARY DAMAGES FOR VIOLATION OF
PLAINTIFF'S CIVIL RIGHTS**

NOW COMES the Plaintiff, Jean Garrett, by and through counsel, Anton L. Iamele and Iamele & Iamele, L.L.P. who hereby sues the Defendant, Baltimore County Police Officer Barry Lockett (ID No. 4194), and in support thereof, states as follows:

**Introduction**

1. This is an action for money damages brought pursuant to 42 U.S.C §§1983, 1985 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution, and under law of the State of Maryland, against Baltimore County Police

1

Officer Barry Lockett.  Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343, and the pendent jurisdiction of this Court to entertain claims arising under state law.  Venue is proper under 28 U.S.C. § 1391 in that the Plaintiff resides in the State of Maryland, and the causes of action set forth in this Complaint concern events that occurred in Baltimore County, Maryland.

2. Notice of the claims advanced herein has been provided in a manner that is consistent with the Local Government Tort Claims Act.  On or about December 14, 2018, a certified letter detailing the claims advanced herein was posted to Michael E. Field, Baltimore County Attorney. The Baltimore County Attorney's Office acknowledged receipt of the notice letter by way of a return correspondence.

3. It is alleged that Defendant Officer Lockett made an unreasonable seizure of the person of Plaintiff Jean Garrett, thereby violating her rights under the Fourth and Fourteenth Amendments of the United States Constitution, and that he battered the Plaintiff and otherwise utilized excessive and unwarranted force during the course of said seizure.

**Parties**

4. Plaintiff Jean Garrett is, and was at all material times, a citizen of Maryland residing at 605 Cranbrook Road, Apt. J, Cockeysville, MD 21030.

5. At all times relevant to this Complaint, Defendant Barry Lockett (Identification No. 4194)  was a duly authorized agent, servant and/or employee of the Baltimore County Police Department working as a police officer.  At all times relevant to this Complaint, Defendant Lockett  was acting within the scope and course of employment as

a member of the Baltimore County Police Department. He is sued in this case both independently and in his official capacity.

## Facts

6. On or about December 15, 2017, at approximately 12:45 P.M., Defendant Lockett and other members of the Baltimore County Police Department were dispatched to 12 Warren Lodge Court, Apartment C, Cockeysville, MD 21030 in connection with a reported disturbance at the residence.

7. The call for service did not, in any way, concern Plaintiff Garrett.

8. Plaintiff Garrett did not reside at the apartment, was not present at the time of the 911 call and was not present when police arrived at the scene.

9. Plaintiff Garrett first learned of the happening at the apartment when she received a telephone call from her daughter. Plaintiff's daughter advised her that she was present in the apartment with her minor children and boyfriend. Plaintiff's daughter further advised her that she was afraid that she or her children might be shot or otherwise harmed if they exited the apartment.

10. Plaintiff Garrett, who was then 66 years-old, was at her own home with her husband when she received the call.

11. After receiving the telephone call, Plaintiff Garrett drove with her husband to the Warren Lodge Court apartment complex.

12. Upon arrival in Warren Lodge Court, Plaintiff Garrett observed her grandson disembarking a school bus at the neighborhood bus stop.

13. Plaintiff Garrett and her husband parked their vehicle in the lot that that was contiguous with her daughter's apartment building.

14. Plaintiff Garrett and her grandson ascended the stairs leading to the apartment complex and entered the building.

15. Once inside the apartment building, Plaintiff Garrett and her grandson approached the primary entrance to her daughter's apartment and knocked on the front door.

16. At the time, there were two or more Baltimore County police officers standing near the front door. One of the officers asked Plaintiff Garrett is she had a key to the apartment, and she responded in the negative.

17. The officers positioned in the front did not detain Plaintiff Garrett or her grandson, nor did they issue any verbal commands.

18. Plaintiff Garrett's knock went unanswered. No one came to the door and no sounds could be heard from within the apartment.

19. Because there was no response, Plaintiff Garrett and her grandson exited the apartment building through the primary door. The Baltimore County police officers who were present at the front door of the premises did not undertake any effort to detain them and/or prevent them from exiting the apartment. Moreover, the Baltimore County police officers who were present at the front door did not direct any verbal commands and/or directives at the pair before they exited the apartment building.

20. Plaintiff Garrett and her grandson then walked around to the rear of the building with intention of knocking on the rear sliding door of her daughter's apartment.

21. At the rear of the building, Plaintiff Garret observed a number of Baltimore County police officers including several officers that appeared to be holding long barrel firearms.

22. Plaintiff Garrett approached a sliding door, believing it to be the rear entrance for her daughter's apartment, and knocked. Plaintiff Garret's grandson quickly notified her, however that she had knocked on the wrong door.

23. None of the Baltimore County Police Department who were stationed in the rear of the apartment building addressed Plaintiff Garrett in any respect when she approached and knocked on the incorrect door.

24. Plaintiff Garrett walked to the correct sliding door and knocked for a second time. Her grandson was standing immediately next to her at the time. Again, there was no response from within the apartment and no one approached a sliding door.

25. While Plaintiff Garrett and her grandson were standing in proximity to the sliding door, Defendant Lockett approached the pair from the right..

26. Because there had been no answer from within the apartment, Plaintiff Garrett and her grandson began to walk away from the sliding door. In order to do so, Plaintiff Garrett turned such that she was facing away from Defendant Lockett.

27. As Plaintiff Garrett was walking away from the premises, her daughter called her cell phone. Plaintiff Garrett answered the call. Her daughter advised her that she was inside, that she was afraid, and that her minor children were hiding under a bed. Plaintiff Garrett advised her daughter that she should "just open the door."

5

28. As Plaintiff Garrett was walking away speaking on her cellular telephone, Defendant Lockett approached her from behind and grabbed the phone out of her hand. Defendant Lockett engaged in a brief telephonic conversation with Plaintiff Garrett's daughter and then placed the phone in his own pocket.

29. Plaintiff Garrett told Defendant Lockett that he had no right to take her cellular phone, and then continued to walk, with her grandson, away from Defendant Lockett.  Plaintiff Garrett was oriented with her back towards Defendant Lockett such that she was not able to see him.

30.  Defendant Lockett, who was positioned behind Plaintiff Garrett, proceeded to sweep her legs and propel her to the ground.

31.  Prior to initiating the use of force, Defendant Lockett had not advised Plaintiff Garret that she was under arrest; Defendant Lockett had not advised Plaintiff Garrett that she would not be permitted to leave the area; and Defendant Lockett had not issued any verbal command or directive for Plaintiff Garrett to stop nor any other verbal command or directive of any kind.

32.  Plaintiff Garrett had no reason to believe and/or understand that she had been directed to remain on the scene. Plaintiff Garrett likewise had no reason to anticipate the use of force that was directed at her and/or that she might be taken into custody.

33.   Plaintiff Garrett had not engaged in any criminal activity and was not engaging in any criminal conduct when Defendant Lockett forcibly took her into custody.

34.  Plaintiff Garret had not undertaken any actions that might reasonably have been perceived as unlawful conduct.

6

35. Plaintiff Garrett was unarmed and walking with her minor grandson. She had not acted in overtly threatening manner toward any of the officers who were present in the vicinity of the apartment nor any third person who was present in the vicinity of the apartment. Moreover, Plaintiff Garrett was not in a position to do physical harm to any person at or near the scene.

36. Plaintiff Garret had not made any verbal utterances that might reasonably have been perceived as threatening and/or disruptive.

37. Plaintiff Garrett had not otherwise interfered in police activity at or near the scene of the apartment in any respect.

38. After Defendant Lockett forcibly propelled Plaintiff Garett to the ground she was oriented face down on the ground with her arms underneath of her torso. Defendant Lockett positioned himself on top of her torso such that she was pinned against the ground.

39. Defendant Lockett then began forcibly pulling on Plaintiff's arms. Because Defendant Lockett was simultaneously bearing down on her with his full weight, Plaintiff Garrett was unable to free her arms from under her body. Defendant Lockett nevertheless continued to pull with great force such that he hyperextended and seriously injured Plaintiff Garrett's shoulder.

40. Another officer approached the scene of the happening and advised Defendant Lockett that he should remove himself from Plaintiff Garrett so that she could free her arms. When Defendant Lockett acted pursuant to this directive, Plaintiff Garrett

was readily placed in handcuffs. While this was occurring, the other officer uttered to Plaintiff Garret: "I didn't have anything to do with this."

41. Plaintiff Garrett did not actively or passively resist the use of force, detention and/or handcuffing in any respect.

42. A reasonable officer confronted with the same circumstances confronting Defendant Lockett would not have believed that he or she possessed lawful authority to detain and/or arrets Plaintiff Garrett.

43. A reasonable officer confronted with the same circumstances confronting Defendant Lockett also would not have believed that it was necessary, proper and/or lawful to utilize force to take Plaintiff Garrett into custody.

44. Defendant Lockett had no reason to undertake the use of force at all.

45. As a direct result of the actions by Defendant Lockett, Plaintiff Garrett suffered serious, painful and permanent injuries. She was ultimately required to undergo surgical repair of her shoulder injury.

46. In addition to the physical injuries described herein, Plaintiff Garrett also suffered the following injuries and damages:

      i. Violation of her well-established constitutional rights under the Fourth and Fourteenth Amendment of the United States Constitution to be free from an unreasonable search and seizure of her person;

     ii. Violation of his clearly established and well settled state constitutional rights under the Maryland Declaration of Rights

>> Articles 24 and 26 including, but not limited to: Freedom from the unreasonable seizure of her person; and Freedom from the use of excessive, unreasonable and unjustified force against his person;

  iii. Loss of his physical liberty;

  iv. Conscious physical pain and suffering;

  v. Emotional trauma and suffering, embarrassment, and mental anguish; and

  vi. Loss of future earning potential.

47. The actions of Defendant Locket also violated the following clearly established and well settled federal and state constitutional rights of Plaintiff Garrett including her right to:

  i. Freedom from the unreasonable seizure of her person;

  ii. Freedom from the use of excessive, unreasonable, and unjustified force against his person.

48. Plaintiff Garrett in no way consented to the described use of force by Defendant Lockett; in no way provoked, contributed to, or in any way presented just or reasonable cause for Defendant Lockett to act as he did; and did nothing to contribute to the unlawful and unjustified detention and use of force carried out by Defendant Lockett.

49. After Plaintiff Garrett was placed in handcuffs, Defendant Lockett continued to speak with Plaintiff Garrett's daughter on the telephone. Defendant Lockett explained in Statement of Probable Cause that he authored as follows:

> I subsequently spoke to Suspect Garrett's daughter, who was on the phone and was able o explain that we just needed to talk to her to work out this situation. She came right out of the apartment and the situation resolved itself in short order.

50. Although the "problem abated itself" following the phone conversation between Defendant Lockett and Plaintiff's daughter, Defendant Lockett needed to justify his use of force and the ensuing detention. He accordingly issued a criminal citation charging Plaintiff Garrett with the common law crime of "hindering." These charges were without merit and were issued solely to justify the use of force and detention.

51. The Maryland Court of Appeals has indicated that the common law crime of hinderance is comprised of the following four elements" (1) A police office engaged in the performance of a duty; (2) An act, or perhaps an omission, by the accused which hinders the officer in the performance of that duty; (3) Knowledge by the accused of facts comprising element (1); and (4) An intent to hinder the officer by the act or omission constituting element (2). *See Titus v. State*, 423 Md. 548, 558-59 (2011)

52. Defendant Lockett was fully aware of these elements when he issued the criminal citation to Plaintiff Garrett.

53. Defendant Lockett was further aware that Plaintiff Garrett's conduct had not hindered and/or prevented him from engaging in the performance of any duty; that Plaintiff Garrett would not have had any reason to believe that she had somehow hindered him in the performance of a duty; and that, given the circumstances, Plaintiff Garrett could not have possessed the requisite intent necessary to support the criminal citation.

54. Plaintiff Garret was nevertheless charged pursuant to the citation issued by Defendant Lockett in the matter styled *State of Maryland v. Jean Garrett*, Baltimore County District Court Case No. 0C00452445. This case was subsequently dismissed without prosecution.

55. Defendant Lockett's act of initiating a criminal proceeding against Plaintiff Garrett was undertaken without legal justification or a proper purpose

56. Even assuming, *arguendo,* that Defendant Lockett's claims in support of the hinderance charge were valid, the use of force against Plaintiff Garrett was still grossly excessive, improper and unlawful.

## COUNT I-BATTERY
### (Plaintiff Jean Garrett v. Defendant Officers Barry Lockett)

57. Plaintiff Garrett hereby incorporates Paragraphs 1-56 as if fully restated herein.

58. Plaintiff Garrett asserts that Defendant Officer Lockett engaged in intentional acts of unlawful conduct with the Plaintiff such that the Plaintiff sustained serious and permanent injuries.

59. Defendant Lockett utilized unreasonable, unlawful, and excessive force by, among other things, throwing Plaintiff to the ground, holding her forcibly against the ground, and maneuvering her in such a manner that he caused shoulder derangement. The force necessary to effectuate this type of injury is substantial.

60. Plaintiff Garrett in no way consented to the described contact by Defendant Officer Lockett; in no way provoked, contributed, or in any way presented just or

reasonable cause for Defendant Lockett to act as he did; and did nothing to contribute to the unlawful touching that Defendant Lockett inflicted upon her.

61. The conduct of Defendant Lockett was without legal justification and was improperly motivated by ill will and actual malice.

62. As a direct proximate result of the battery perpetrated by Defendant Lockett, Plaintiff Garett sustained significant injuries, medical bills, psychological damages and additional economic injuries. Plaintiff Garrett also suffered additional injuries which are not expressly enumerated herein.

## COUNT II-FALSE ARREST
**(Plaintiff Jean Garrett v. Defendant Officers Barry Lockett)**

63. Plaintiff Garrett hereby incorporates Paragraph 1-62 as if fully restated herein.

64. Defendant Officer Lockett did not have any rational reason to believe that Plaintiff Garrett had engaged in any crime or acted to hinder the performance of police duty and was therefore without lawful authority or adequate probable cause to detain/arrest the Plaintiff. Plaintiff Garrett was nevertheless subjected to the detention described herein.

65. The false arrest that was perpetrated by Defendant Lockett was made without warrant and without probable cause to support a lawful arrest.

66. The conduct attributed to Defendant Lockett demonstrated ill will, improper motivation, and actual malice on the part of the Defendants.

67. As a direct consequence in result of the acts of Defendant Lockett as described herein, the Plaintiff was deprived of her liberty, was caused to suffer permanent

physical injuries, and has suffered and will continue to suffer economic loss due to the sums of money spent to alleviate the injuries that were inflicted by the Defendant. The Plaintiff has also suffered additional injuries which are not expressly enumerated herein.

### COUNT III-FALSE IMPRISONMENT
**(Plaintiff Jean Garrett v. Defendant Officers Barry Lockett)**

68. Plaintiff Garret hereby incorporates Paragraph 1-67 as if fully restated herein.

69. Defendant Lockett falsely imprisoned the Plaintiff Garrett throughout the course of events described herein. The instances of a false imprisonment include, but are not limited to, the occasion where the Plaintiff was (1) restrained by Defendant Officer Lockett, (2) forcefully thrown against the ground by Defendant Lockett, (3) held to the ground by Defendant Lockett, and (4) subsequently detained in handcuffs at the scene.

70. The actions of Defendant Lockett caused Plaintiff Garrett to be unlawfully deprived of her liberty.

71. As a result of the unlawful conduct described herein, Plaintiff Garrett was detained against her will and sustained significant injuries and damages described herein.

72. The Defendant's actions demonstrate ill will, improper motivation, evil purpose, and/or actual malice.

### COUNT IV: VIOLATION OF 42 U.S.C. 1983-FOURTH AND FOURTEENTH AMENDMENTS
**(Plaintiff Jean Garrett v. Defendant Officers Barry Lockett)**

73. Plaintiff Garrett hereby incorporates Paragraphs 1-72 as if fully restated herein.

74. At all times relevant to this Complaint, Plaintiff Garrett had rights afforded to her by the Fourth and Fourteenth Amendments to the United States Constitution not to have her person or property unlawfully searched, seized, detained in an unreasonable manner; not to be deprived of her liberty without due process of law; not to be subjected to excessive force during the course of an arrest; not to be unreasonably denied necessary medical treatment; and not to be summarily punished.

75. At all times relevant herein, Defendant Lockett was acting under the color of State and local law and as a member of the Baltimore County Police Department. His conduct therefore triggers 42 U.S.C. §1983.

76. Defendant Officer Lockett's actions and omissions deprived Plaintiff Garrett of her clearly established and well-settled Constitutional rights.

77. Defendant Officer Lockett knowingly acted to deprive the Plaintiff of her Constitutional rights maliciously and with reckless disregard..

**COUNT V: VIOLATION OF ARTICLE 24 AND 26 OF THE MARYLAND STATE DECLARATION OF RIGHTS**
**(Plaintiff Jean Garrett v. Defendant Officers Barry Lockett)**

78. Plaintiff Garrett hereby incorporates Paragraphs 1-77 as if fully restated herein.

79. As a direct proximate result of the actions and omissions of the Defendant Officer Lockett described herein, all of which were committed under the color of his authority as a member of the Baltimore County Police Department and while acting in the

capacity of duly authorized police officer, Plaintiff was deprived of certain "State rights" established by way of Article 24 and 26 of the Maryland Declaration of Rights.

80. As a result of the above-described acts attributed to Defendant Lockett, Plaintiff was deprived of rights and immunities secured to her under the Maryland Declaration of Rights: in particular, her rights to the security of her person and freedom from arrest except upon probable cause, as well as her right not to be deprived of liberty without due process of law. Furthermore, the Plaintiff was deprived of her State right not to be subjected to excessive force during the course of an ongoing arrest.

81. As a direct consequence in result of the actions and omissions of the Defendant described herein, the Plaintiff was deprived of her liberty; was caused to suffer physical injuries; lost time from her employment; and has suffered and will continue to suffer economic loss due to the sums of money spent to alleviate the injuries that were inflicted by the Defendant.

WHEREFORE, Plaintiff Jean Garrett hereby requests that this Honorable Court:

(A) Award the Plaintiff actual, compensatory, and consequential damages in an amount to be determined at trial against Defendant Barry Lockett;

(B.) Award Plaintiff punitive damages in an amount to be determined at trial against Defendant Barry Lockett;

(C.) Award the Plaintiff reasonable attorney's fees and costs incurred in pursuing this action, as provided under 42 U.S.C. §1988; and

(D.) Award such other and further relief as this Court may deem appropriate.

Respectfully submitted,

IAMELE & IAMELE, LLP

_____- s-_____
Anton L. Iamele, Federal Bar No. 14845
201 North Charles Street, Suite 400
Baltimore, Maryland 21201
410-779-6160 (Telephone)
410-779-6161 (Facsimile)
aiamele@iamelelaw.com
*Counsel for Plaintiffs*

## **PRAYER FOR JURY TRIAL**

Plaintiff hereby requests that all issues raised in this Complaint be decided by way of a jury trial.

_____- s-_____
Anton L. Iamele